UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CENTREAL SCOTT,                                CASE NO.:

    Plaintiff,

v.

SENIOR LIVING PROPERTIES III, LLC
d/b/a SAVANNAH GRAND OF MAITLAND,
a Florida Limited Liability Company,

    Defendant.
_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, CENTREAL SCOTT ("Ms. Scott" or "Plaintiff"), brings this action pursuant to the Family and Medical Leave Act, as amended, 29 U.S.C. § 2601, *et seq.* ("the FMLA"), seeking recovery from SENIOR LIVING PROPERTIES III, LLC d/b/a SAVANNAH GRAND OF MAITLAND ("SLP" or "Defendant") for back pay, an equal amount as liquidated damages, other monetary damages, reinstatement, injunctive relief, equitable relief, front pay, declaratory relief, and reasonable attorneys' fees and costs.

## PARTIES, JURISDICTION, AND VENUE

1. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §1337 and the FMLA, and the authority to grant declaratory relief under the FMLA, and pursuant to 28 U.S.C. § 2201, *et seq.*

2. At all times relevant hereto, Plaintiff was an employee of Defendant, and resided in Seminole County, Florida.

3. Defendant is a Florida not for profit corporation that is located and does business in Orange County, Florida, and is therefore within the jurisdiction of this Court.

4. Plaintiff worked for Defendant in Orange County, Florida, and therefore the proper venue for this case is the Orlando Division of the Middle District of Florida.

5. At all times relevant hereto, Defendant was an employer covered by the FMLA, because it was engaged in commerce or in an industry affecting commerce which employed 50 or more employees within 75 miles of where Plaintiff worked, for each working day during each of 20 or more calendar workweeks, prior to seeking leave under the FMLA.

6. At all times relevant hereto, Plaintiff was an employee entitled to leave under the FMLA, based on the fact that she: (a) suffered from a serious health condition as defined by the FMLA, necessitating Plaintiff to take FMLA leave; and (b) was employed by Defendant for at least 12 months and worked at least 1,250 hours during the relevant 12-month period prior to her seeking to exercise her rights to FMLA leave.

## FACTUAL ALLEGATIONS

7. Plaintiff worked for Defendant as Resident Care Coordinator from August 22, 2018, until her unlawful and discriminatory termination on December 18, 2019.

8. In the early fall of 2019, Ms. Scott disclosed to SLP's Executive Director, Kim Russo, and to Suzette Hilerio in SLP's Human Resources Department, that she was pregnant, a serious health condition, with an expected due date in late September or early October of 2019.

9. On September 4, 2019, Ms. Scott applied for a period of continuous unpaid FMLA leave in anticipation of her upcoming childbirth, and recovery therefrom, in order to address her serious health condition.

10. Ms. Scott provided SLP appropriate medical certification relating to her serious health condition from her treating physician on or about September 16, 2019.

11. Because fluid had accumulated around the amniotic sac, Ms. Scott's doctor directed her to commence her FMLA leave earlier than anticipated, and Ms. Scott did so on September 16, 2019.

12. Labor was induced on September 26, 2019, and Ms. Scott's child was delivered on September 29, 2019.

13. During her unpaid FMLA leave to deliver her child, recover from the procedure, and bond with the child, Ms. Scott's managers and supervisors at SLP continuously peppered Ms. Scott with work-related requests and inquiries.

14. Ms. Scott politely informed her managers and supervisors that she required time to recover from the delivery and to bond with her child, and that she did not have the time or the ability to respond to so many requests and inquiries.

15. On October 25, 2019, Ms. Scott received a text from a co-worker, Jessica, advising that Ms. Scott's position had been eliminated.

16. Ms. Scott called SLP and reminded her managers and supervisors that she was on pre-approved FMLA leave and that no adverse employment action could or should be taken against her.

17. On November 4, 2019, Ms. Scott's treating physician cleared Ms. Scott to return to work at SLP on November 11, 2019.

18. On November 7, 2019, SLP's new Executive Director, Karen Burch, called Ms. Scott and told her that Ms. Scott would have to meet with Ms. Burch before Ms. Scott was permitted to return to work, and further advised that SLP had put Ms. Scott on a so-called "corrective action plan" for unspecified "mistakes" that Ms. Scott had allegedly made.

19. On November 8, 2019, Ms. Scott met with, among others, Ms. Burch and Ms. Hilerio. At that time, SLP presented Ms. Scott with a purported "writeup" for things that were not Ms. Scott's fault, many of which had happened while she was out on FMLA leave.

20. Ms. Scott wisely declined to sign SLP's spurious document.

21. Ms. Scott returned to work at SLP on November 11, 2019.

22. Shortly thereafter, SLP continued its campaign of retaliation against her by transferring her to another unit, Memory Care, where she would be supervised by a former subordinate of hers, Carrie Green, who had flamed out as a Nurse ignominiously after only three (3) days during a previous stint with SLP.

23. Ms. Green and a nurse, Kateria, constantly micromanaged and criticized Ms. Scott as she attempted to adapt to her new role.

24. On December 9, 2019, SLP issued another spurious "writeup" to Ms. Scott, this time claiming that Ms. Scott had written up an order incorrectly.

25. In fact, the order was written up properly by Ms. Scott, and one of SLP's Med Techs had implemented the order incorrectly.

26. Ms. Burch and Ms. Green, who are good friends, candidly admitted to Ms. Scott that SLP had a plan to push Ms. Scott out of SLP and, that if Ms. Scott did not quit, the next step was for SLP to fire her.

27. On December 18, 2019, SLP's retaliation against Ms. Scott culminated when Ms. Burch informed Ms. Scott that SLP had decided to terminate her employment, effective immediately.

28. SLP offered no cogent, non-discriminatory, non-retaliatory reason for taking adverse employment action against Ms. Scott.

29. Defendant's multiple adverse employment actions were taken to interfere with, and in retaliation for, Ms. Scott notifying SLP of her serious health condition, and in retaliation for Ms. Scott utilizing unpaid leave pursuant to the FMLA in order to treat and address same.

30. Defendant did not have a legitimate, non-retaliatory reason, for its actions.

31. Any reason provided by Defendant for its actions is a pretext, designed to cover up FMLA interference and retaliation.

32. Defendant's conduct constitutes intentional interference and retaliation under the FMLA.

33. The timing of Plaintiff's use of what should have been protected FMLA leave, and Defendant's spurious writeups, retaliatory transfer of Ms. Scott to the Memory Care unit, and termination of her employment, alone demonstrates a causal and temporal connection between her protected activity and the illegal actions taken against her by Defendant.

34. Defendant purposefully and intentionally interfered with and retaliated against Plaintiff for her utilization of what should have been protected FMLA leave.

35. As a result of Defendant's illegal conduct, Plaintiff has suffered damages, including loss of employment, wages, benefits, and other remuneration to which she is entitled.

36. Defendant lacked a subjective or objective good faith basis for its actions, and Plaintiff is therefore entitled to liquidated damages.

37. Plaintiff has retained the law firm of RICHARD CELLER LEGAL, P.A., to represent her in the litigation and has agreed to pay the firm a reasonable fee for its services.

## COUNT I- UNLAWFUL INTERFERENCE UNDER THE FMLA

38. Plaintiff reincorporates and readopts all allegations contained within Paragraphs 1-37, above.

39. At all times relevant hereto, Plaintiff was protected by the FMLA.

40. At all times relevant hereto, Plaintiff was protected from interference under the FMLA.

41. At all times relevant hereto, Defendant interfered with Plaintiff by peppering her with requests and inquiries while she was out on approved FMLA leave, by concocting spurious writeups for things which were not Plaintiff's fault, by transferring Plaintiff to the Memory Care unit, and by refusing to allow Plaintiff to exercise her FMLA rights freely.

42. As a result of Defendant's willful and unlawful acts via interfering with Plaintiff for exercising her rights pursuant to the FMLA, Plaintiff has suffered damages and incurred reasonable attorneys' fees and costs.

43. As a result of Defendant's willful violation of the FMLA, Plaintiff is entitled to liquidated damages.

WHEREFORE, Plaintiff requests that this Court enter an Order awarding her back pay, an equal amount as liquidated damages, other monetary damages, equitable relief, declaratory relief, reasonable attorneys' fees and costs, and any and all further relief that this Court determines to be just and appropriate.

## COUNT II- UNLAWFUL RETALIATION UNDER THE FMLA

44. Plaintiff reincorporates and readopts all allegations contained within Paragraphs 1-37, above.

45. At all times relevant hereto, Plaintiff was protected by the FMLA.

46. At all times relevant hereto, Plaintiff was protected from retaliation under the FMLA.

47. At all times relevant hereto, Defendant retaliated against Plaintiff by issuing her spurious writeups, transferring her to the Memory Care unit, and then terminating her employment for applying for FMLA leave and for utilizing what should have been FMLA-protected leave.

48. Defendant acted with the intent to retaliate against Plaintiff, because Plaintiff exercised her rights to take approved leave pursuant to the FMLA.

49. As a result of Defendant's intentional, willful, and unlawful acts by retaliating against Plaintiff for exercising her rights pursuant to the FMLA, Plaintiff has suffered damages and incurred reasonable attorneys' fees and costs.

50. As a result of Defendant's willful violations of the FMLA, Plaintiff is entitled to liquidated damages.

WHEREFORE, Plaintiff requests that this Court enter an Order awarding her back pay, an equal amount as liquidated damages, other monetary damages, equitable relief, declaratory relief, reasonable attorneys' fees and costs, and any and all further relief that this Court determines to be just and appropriate.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands trial by jury on all issues so triable.

DATED this 7th day of October, 2020.

                                                Respectfully Submitted,

                                                ***/s/ Noah E. Storch***
                                                Noah E. Storch, Esq.
                                                Florida Bar No. 0085476
                                                RICHARD CELLER LEGAL, P.A.
                                                10368 W. SR. 84, Suite 103
                                                Davie, Florida 33324
                                                Telephone: (866) 344-9243
                                                Facsimile:   (954) 337-2771
                                                E-mail: **noah@floridaovertimelawyer.com**

                                                *Attorneys for Plaintiff*